Robert E. PHIPPS, Plaintiff,

v.

Paul D. McGINNIS, Commissioner of Correction and Harold W. Follette, Warden, Green Haven Prison, Stormville, New York, Defendants.

No. 69 Civ. 3236.

United States District Court,
S. D. New York.

March 20, 1970.

Supplemental Opinion April 13, 1970.

Peter W. Williamson, New York City, for plaintiff; Robert E. Phipps, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, for defendants; John G. Proudfit, New York City, of counsel.

## MEMORANDUM OPINION

LASKER, District Judge.

Defendants move pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure for an order dismissing plaintiff's complaint on the ground that the complaint fails to state a claim upon which relief may be granted. Defendants contend that plaintiff's claim "does not raise a valid issue for consideration by this Court." I disagree.

After arrest, but before conviction, plaintiff spent 488 days in county jail. He is presently in the custody of the Warden of Green Haven Prison, Stormville, New York, where he was received June 5, 1968, after a conviction in Nassau County Court of the crimes of burglary in the third degree, possession of burglar's tools as a felony, and petty larceny. He is serving an indeterminate sentence of 3½ to 5 years. He has been granted jail time credit of 488 days for the time he spent in county jail prior to transfer to state prison. However, he has received no "good behavior time" credit ("good time" credit) for the time so served in jail.

Plaintiff has brought the instant action to compel defendants to recompute his minimum release date (that is, the date upon which he would first have the right to appear before the parole board), contending that he should have received good time credit for the time served in jail prior to his reception at the state prison. As indicated below, if the plaintiff's position is correct he would be entitled to appear before the parole board approximately five months earlier than he would on the basis of the state's computation. Plaintiff urges that the withholding from him of good time credit for the period of his incarceration in county jail (from the date of his arrest to the date of his delivery to state prison) deprives him of equal protection of the laws in violation of the Fourteenth Amendment in that such a method of computing good time discriminates against a prisoner who cannot afford to obtain bail while awaiting sentencing.

Plaintiff therefore seeks a declaratory judgment that Section 230 of the New York Correction Law, McKinney's Consol.Laws, c. 43, under which his so-called good time was computed is unconstitutional, and for an injunction against the alleged discriminatory practices pursued by defendants in application of that statute.

Plaintiff (moving *pro se*) brings his suit under 42 U.S.C. §§ 1981, 1983 (the "Civil Rights Act") and invokes the ju-

risdiction of the court under 28 U.S.C. § 1343(3). He also seeks the convocation of a three-judge district court [1] pursuant to 28 U.S.C. §§ 2281, 2284, to consider the allegations of unconstitutionality and enjoin enforcement of the state statute in question. Plaintiff seeks no money damages, but only the recomputation of his time to appear before the parole board.

Defendants present two arguments in support of their motion to dismiss: first, that the court lacks jurisdiction since plaintiff's suit seeks release from prison and attempts improperly to avoid the requirements of 28 U.S.C. § 2254; and second, that in any event the complaint fails to state a claim upon which relief may be granted. I treat these contentions separately below.

## JURISDICTION

■ It is settled that the Civil Rights statute cannot be used by a state prisoner to circumvent established rules of comity and the requirement of the federal statute that habeas corpus shall not be granted unless it appears that the applicant has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254; Smartt v. Avery, 411 F. 2d 408 (6th Cir. 1969); Greene v. State of New York, 281 F.Supp. 579 (S.D.N.Y. 1967); Lombardi v. Peace, 259 F.Supp. 222 (S.D.N.Y.1966). Thus, it has been held that redress of alleged civil rights violations incurred in state criminal proceedings or release from custody of persons imprisoned by state courts may not be secured under the Civil Rights Act. See, e.g., Martin v. Roach, 280 F.Supp. 480 (S.D.N.Y.1968); Peinado v. Adult Authority of Department of Corrections, 405 F.2d 1185 (9th Cir. 1969); Johnson v. Walker, 317 F.2d 418 (5th Cir. 1963).

In the instant action, however, plaintiff makes no charge of unconstitutional detention resulting from any illegality in his state court trial and conviction. While it is true that the complaint (prepared exceedingly well for a layman, but nevertheless inartistically) does request "discharge to parole", I construe this to constitute a prayer for the right to appear before the parole board and not for release from prison.

Neither the plaintiff's complete nor his immediate liberty is at stake, for even if the relief requested were granted and plaintiff secured an immediate hearing before the parole board, nevertheless the parole board's power is discretionary and an adverse decision would not be subject to judicial review. United States ex rel. Campbell v. Pate, 401 F.2d 55, 57 (7th Cir. 1968). However, if plaintiff's time has not been properly computed, what he does lose is, as the *Campbell* court phrased it, "the possibility that if he appeared before the board he might persuade it to decide in his favor. Of course this loss, in practical, human, terms is serious and involves a chance for at least qualified liberty." *Id.*

■ The traditional view is undoubtedly that federal courts have no power to interfere in the internal discipline of state penal institutions. See, e.g., Wright v. McMann, 387 F.2d 519, 522 (2d Cir. 1967); Siegel v. Ragen, 180 F. 2d 785, 788 (7th Cir. 1950). It is now settled, however, that, although the rights of a person serving a valid state sentence are limited, "he does have some federally protected rights which he may redress by a sec. 1983 action against those who have custody of him." United States ex rel. Campbell v. Pate, supra, 401 F.2d at 57; Wright v. McMann, supra.

■■ The applicable legal principles are no longer in serious dispute. The Civil Rights Act specifically creates a cause of action for deprivations, by per-

---

[1.] The case is before me solely on defendants' motion to dismiss the complaint. However, an examination of the complaint indicates that plaintiff seeks the convening of a three-judge court, but he has made no distinct motion to convene such a court. The court has secured an offer of counsel to assist defendant with the procedural complexities involved.

sons acting under color of state law, of rights secured by the Constitution. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Furthermore, that state prisoners fall within the protection of 42 U.S.C. § 1983 and may bring an action under the Civil Rights Act is established, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Wright v. McMann, supra; Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Cal.1966); and a district court has power to grant injunctive relief where there has been a deprivation of civil rights, Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961). Moreover, as distinct from the provisions of 28 U.S.C. § 2254, the Civil Rights Act, when properly relied upon for federal jurisdiction, does not require the exhaustion of state judicial remedies.[2] As the Second Circuit Court stated in Wright v. McMann, supra, 387 F.2d at 522–523:

"Any remaining belief in the vitality of the exhaustion principle was dispelled when the concurrent jurisdiction of the federal courts in cases under the [Civil Rights] Act was reaffirmed in clear terms in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)."

Finally, and perhaps most importantly as to the plaintiff here, it is settled that

"* * * prisoners do not lose all their constitutional rights and that the Due Process and Equal Protection Clauses of the Fourteenth Amendment follow them into prison and protect them there from unconstitutional action on the part of prison authorities carried out under color of state law." Washington v. Lee, 263 F.Supp. 327 (M.D.Ala.1966) (Johnson, J.)

Indeed, numerous courts have found the presence or absence of an equal protection claim to be of critical importance in assessing the jurisdictional propriety of the civil rights action in question. See, e.g., Peinado v. Adult Authority of Department of Corrections, supra, 405 F.2d at 1186; United States ex rel. Campbell v. Pate, supra, 401 F.2d at 57; cf. Burns v. Crouse, 339 F.2d 883, 884 (10th Cir. 1964), cert. denied 380 U.S. 925, 85 S.Ct. 930, 13 L.Ed.2d 811 (1965).

■ Accordingly, notwithstanding defendants' construction of plaintiff's complaint as a habeas corpus petition which would require exhaustion of state remedies, I conclude that plaintiff has stated a cognizable claim under the Civil Rights Act and that this court has jurisdiction.[3]

---

2. In passing, it should be noted that plaintiff did in fact first seek relief in the state courts. He brought an Article 78 proceeding to compel defendants to recompute the date when he might first appear before the parole board. On June 19, 1969, the Supreme Court, Dutchess County, relying on the reasoning of Perez v. Follette, infra, dismissed plaintiff's petition. He then brought the instant action in federal court.

3. Several recent federal cases which sustain the court's acceptance of jurisdiction in the suit at bar are: 1) United States ex rel. Campbell v. Pate, supra, in which the Seventh Circuit reversed the district court's dismissal of a state prisoner's § 1983 action and held that his complaint, alleging the capricious reduction of merit time and resultant postponement of the date of his parole hearing, stated a claim of denial of equal protection upon which relief could be granted; 2) Douglas v.

Sigler, 386 F.2d 684 (8th Cir. 1967), in which the Eighth Circuit (and the trial court) accepted jurisdiction of a state prisoner's civil rights action which alleged that a Nebraska state statute relating to a convict's loss of good time credit for misconduct and the effect of good behavior thereafter was vague, overly broad and ambiguous and thus violative of due process and equal protection under the Fourteenth Amendment; and 3) Rodriguez v. McGinnis, 307 F.Supp. 627 (N.D.N.Y.1969), where Judge Foley held that a New York state prisoner who was denied good time credit by Prison Commutation Board that failed to make required written report to Commissioner of Corrections on its reasons for denial had been deprived of due process and equal protection of the law, and was therefore entitled to a § 1983 injunction requiring prison authorities to credit this time to parole and to conditional release forthwith.

## THE MERIT OF THE COMPLAINT

█ Finding that the jurisdictional requirements have been satisfied, I turn to defendants' contention that no cause of action has been stated upon which relief can be granted. Defendants have apparently computed plaintiff's minimum release date by subtracting the time he served in county jail from his minimum sentence and then dividing by three to determine the maximum good time reduction to which plaintiff might be entitled. Plaintiff, on the other hand, contends that jail time should not be subtracted from the minimum sentence before the maximum allowance for good time is computed.

On its face, Section 230 of the Correction Law would appear to validate defendants' method of computation. Subsection 2 provides that a state prisoner may receive, "for good conduct and efficient and willing performance of duties assigned, a reduction of his sentence not to exceed ten days for each month of the minimum term in the case of an indeterminate sentence * * *."[4] Subsection 3 states that "in the case of an indeterminate sentence prisoner said reduction shall be computed upon the minimum term of such sentence, *less jail time allowance*." (Emphasis added.)[5] Thus, while jail time itself must be credited against the term of any sentence imposed (Penal Law, McKinney's Consol. Laws, c. 40, § 70.30(3)), a prisoner, seemingly on the basis of the statutory formula set forth above, is denied any good behavior time credit for such jail time when his maximum good time allowance is computed. It is this provision of the statute and this practice which, plaintiff claims, deprive him of equal protection of the laws.

The practical effect of this section, plaintiff contends, is to discriminate against those indigent defendants who cannot afford bail and so must serve time in jail awaiting sentence, while rewarding those fortunate enough to obtain bail prior to judgment with a full allowance of good time credit. In the instant case, plaintiff argues that his inability to furnish bail has resulted in a loss of about five months' good time credit during the sixteen-month period he spent in county jail. He maintains that had he been able to post bail and thereby avoid any jail time prior to sentence, he would have been eligible to appear before the parole board in 28 months (based on a one-third reduction of the minimum sentence), whereas with the loss of the five months' good time noted above, he does not become eligible for parole until a total of some 33 months of confinement (both in county jail and state prison) have elapsed.

In a recent state court proceeding involving an identical claim by another prisoner, the court attempted to explain the rational basis for this otherwise inexplicable distinction in treatment between bail and non-bail defendants. In Perez v. Follette, 58 Misc.2d 319, 295 N.Y.S.2d 231, 233–234 (Sup.Ct., Dutchess County, 1968), the court stated:

"The policy underlying the discretionary grant of good time reductions is clear. The attitude and conduct of prisoners should improve if they are offered an incentive for good and productive behavior while at the same time the fact that reductions can be withheld will inhibit bad conduct. Necessarily this policy can be implemented only during the time a prisoner is in the actual custody of the officials who will grant or withhold the

---

4. We are here dealing with an "indeterminate sentence," that is, a "sentence to imprisonment in a state prison having minimum and maximum limits fixed by the court." Correction Law § 230(1).

5. Apparently the only exception to this rule is in the case of a prisoner confined

in a county penitentiary, whose "reduction shall be computed upon the term of the sentence as imposed by the court, *including jail time allowance*." Correction Law § 230(3). (Emphasis added.) Such a distinction within the very section itself would seem to raise possible equal protection objections.

reductions. Thus the time a prisoner is in the custody of others—that is when he is serving jail time before sentence—cannot be counted as time for which good time reductions can be granted or withheld. This is a rational basis for the statute petitioner challenges."

I do not find this reasoning so persuasive or compelling as to warrant a dismissal on the merits of plaintiff's cause of action. On the contrary, it would seem that awarding good time credit for time served *both* before and after sentencing, whether by jail or prison authorities, would serve the greater goal of inducing good behavior by the prisoners throughout the total period of their confinement.

In addition, recent case law suggests a split in authority among the state courts as to the proper interpretation of the statute itself. In People ex rel. Stark v. Deegan, 56 Misc.2d 567, 289 N.Y.S.2d 285 (Sup.Ct., Westchester County, 1968), the court was confronted with the identical issue here involved as it applied to the conditional (or maximum), rather than minimum, release date of a state prisoner. Plaintiff there contended that the good behavior allowance provided in Section 230(4) and Section 230–a of the Correction Law contemplated the inclusion of jail time in determining the amount of sentence reduction for conditional release purposes. The state, on the other hand, argued that under the statute prisoners could be credited with good time only for the time actually served in state prison. Justice Trainor rejected the state's position, observing at 287 of 289 N.Y.S.2d:

"Adoption of the respondent's interpretation would have the effect of prejudicing a defendant who was unable to raise funds in order to be released on bail, and would deprive him of 'equal protection of the laws' in violation of the 14th Amendment of the U. S. Constitution. * * * If there is logic or justice in this anomaly it escapes the court."

It is true that Justice Trainor, in construing Section 230(4), was not faced with language explicitly referring to the subject of "jail time" and was therefore able to resolve the ambiguity in favor of plaintiff's personal liberty, whereas here the plaintiff challenges Section 230(3), which specifically refers to deduction of jail time. Indeed, Justice Trainor himself took note of the apparent inconsistency between subdivisions 3 and 4 of Section 230 by stating at 287:

"It is curious that subdivision 3 of said section * * * specifically mentions 'jail time' in establishing a formula for sentence reduction, while subdivision 4 is silent as to that phrase."

I share Justice Trainor's skepticism as to the internal consistency of a statute which, for conditional release purposes, reduces a prisoner's *maximum* sentence by the amount of good behavior credit accumulated during jail time while, for minimum release purposes, it refuses to discount that same prisoner's *minimum* sentence by the same amount of good time credit earned during the same stay in jail. It would seem that both subsections should follow a single formula with regard to sentence reductions, and, as stated by Justice Trainor, adherence to the defendants' method of calculation could constitute a violation of the constitutional guarantee of equal protection.

Recently, the Supreme Court, Suffolk County, had occasion to pass on the same question that had earlier come before the *Deegan* court. In Paul v. Warden of the Suffolk County Jail (New York Law Journal, May 21, 1969, at p. 18, col. 6), Justice Ritchie characterized the uneven treatment of bail and non-bail defendants under Section 230(4) in the following unqualified language:

"This court is not in agreement with [the] method employed. It is inequitable in that it discriminates against those persons charged with crime that are able to furnish bail upon arraignment and those remanded as a result of inability to furnish bail.

\* \* \* \* \* \*

"This court refuses to countenance such disparity and discrimination and finds it extremely difficult to perceive that such was the intent of the legislation enacted permitting reductions in sentence for good behavior during imprisonment."

For the reasons stated above I find that the court has jurisdiction in the matter and that the complaint states a claim upon which relief may be granted. The defendants' motion to dismiss is hereby denied.

### Supplemental Opinion

█ Robert E. Phipps, the plaintiff, is a New York State prisoner at Green Haven Prison, Stormville, New York. He brought suit by pro se complaint under 42 U.S.C. §§ 1981, 1983 (the "Civil Rights Act") invoking the jurisdiction of the court under 28 U.S.C. § 1343(3), seeking a declaratory judgment that Section 230 of the New York Correction Law is unconstitutional, and for an injunction against alleged discriminatory practices pursued by the defendants in accordance with that statute. Prior hereto the defendants moved, pursuant to Rule 12(b) (6), F.R.Civ.P., to dismiss plaintiff's complaint on the ground that it failed to state a claim upon which relief could be granted. By memorandum opinion of March 20, 1970, I denied the motion.

Plaintiff is presently represented by counsel and has filed an amended complaint, which he is entitled to do as a matter of right under Rule 15(a), F.R. Civ.P., this being his first amended pleading and no responsive pleading having been served since the filing of the original complaint.

Plaintiff now moves for the convening of a district court of three judges under 28 U.S.C. § 2281 et seq., and seeks a determination that the case is properly brought as a class action under Rule 23, F.R.Civ.P. Plaintiff is serving an indeterminate sentence of three and one-half to five years. Prior to his conviction he served 488 days in county jail awaiting trial. Although he received jail time credit for this period of detention pursuant to New York Penal Law § 70.-30(3), he has not received, and under the provisions of Section 230(3) of the Correction Law he apparently is not entitled to receive, good behavior time credit ("good time credit") for the period he spent in jail between arrest and sentence. If the plaintiff had received good time credit for the time he spent in county jail between arrest and sentence, he would have been entitled to appear before the Parole Board approximately five months earlier than he will be as the result of the lesser credit allowed by Section 230(3).

The burden of plaintiff's complaint is that Section 230 of the Correction Law violates the Fourteenth Amendment to the Constitution of the United States because it denies equal protection of the law to indigent people who cannot afford to obtain bail between arrest and sentence. He argues that those who can furnish bail prior to sentence earn a full allowance of good time credit for the entire period which they ultimately spend in custody, whereas indigent defendants who are jailed between arrest and sentence because of their inability to furnish bail are not entitled under the statute to good time credit for the time spent in jail.

The amended complaint is substantially identical to Phipps' original complaint except that it expressly applies for the convening of a three-judge court and states that plaintiff has instituted the suit as a class action in a representative capacity on behalf of all inmates of prisons of the State of New York who have been denied good time credit under the provisions of Section 230. Although the issues before me on defendants' motion to dismiss the original complaint are not precisely the same as those now presented, there is a substantial similarity between them, and reference is made to the views which I expressed in my prior memorandum opinion as to the validity of plaintiff's complaint.

The question before me now is whether a three-judge court should be convened. The criteria necessary to such a determination were described by the Supreme Court in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, as follows:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

The Court of Appeals of this Circuit has made it clear in the recent decision in Heaney et al. v. Allen et al., 425 F.2d 869 (Decided February 5, 1970), that these criteria must be seriously applied and that a three-judge court is not to be convened unless the district judge to whom the application is made finds that the issue before him presents a substantial constitutional question.

Since Section 230 acknowledgedly has state-wide application (and therefore clearly comes within the provisions of 28 U.S.C. § 2281), and since plaintiff's amended complaint clearly alleges injury for which equitable relief may be appropriate, the only matter to be determined is the substantiality of the plaintiff's constitutional claim.

As indicated above, plaintiff argues that Section 230 violates the Fourteenth Amendment, since the effect of the statutorily prescribed method of computing minimum release dates is to penalize indigents as compared to non-indigents because of their failure to raise bail.

I find the plaintiff's constitutional claim to be substantial. In the landmark decision of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court established that the Equal Protection and Due Process clauses protect prisoners from invidious discrimination on account of poverty. In that case the Court held that, while a state could constitutionally deny the right of appeal, once it affords that right to persons convicted of crime it cannot effectively condition the right "in a way that discriminates against some convicted defendants on account of their poverty." 351 U.S. at 18, 76 S.Ct. at 590.

In Bynum v. Connecticut Commission on Forfeited Rights, 410 F.2d 173 (2d Cir. 1969), Judge Kaufman held that an attack on Connecticut's procedures for enabling ex-felons to regain the right to vote in elections raised constitutional questions substantial enough to require the convening of a three-judge court. The plaintiff's claim in *Bynum* was that Connecticut's requirement that ex-felons pay a $5 fee in order to gain consideration of their petition to regain the right to vote unjustly discriminated against the poor because wealth or fee payments have no relation to voting qualifications. The Court of Appeals concluded that this claim raised substantial constitutional questions. Similarly, the Court in Gilmore v. Lynch, 400 F.2d 228 (9th Cir. 1968), held that an Equal Protection claim challenging California prison regulations which prevent prisoners from keeping law books or reference material had sufficient constitutional merit to require the convening of a three-judge court. The appellants had contended that the prison regulations would enable affluent prisoners who could obtain outside counsel for legal research to gain effective access to the courts, whereas indigent prisoners' access would be limited.

Applying the principle of Griffin v. Illinois, supra, and its progeny to this case, it follows that, although New York State may not be required to grant parole[1] to plaintiff and others similarly

___

I. It is true, as stated in my prior memorandum opinion, that neither the plaintiff's complete nor immediate liberty is

at stake, since the Parole Board has the discretion to refuse parole even if he appears before the Board. However,

situated, once it has undertaken to provide procedures for granting parole it cannot withhold or delay those procedures for reasons resulting from the prisoners' indigency, unless there are rational purposes for doing so. As I observed in my previous opinion, there appear to be no overriding justifications for the New York scheme for computing good time credit, and two state decisions have impliedly questioned its constitutionality.[2] In these circumstances, it appears that plaintiff's claim has merit. Nor is it foreclosed by previous decisions of a higher court, cf. California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938).

Accordingly, the plaintiff's motion for the convening of a three-judge court under Title 28, §§ 2281, 2284, is granted for the purpose of determining the constitutionality of Section 230 of the New York Correction Law. A determination as to whether the suit has been properly brought as a class action will be deferred for consideration by the three-judge court itself.

It is so ordered.

the plaintiff's loss may nevertheless be real, for, as stated in United States ex rel. Campbell v. Pate, 401 F.2d 55, 57: "What he is losing, * * * is the possibility that if he appeared before the board he might persuade it to decide in his favor. Of course this loss, in practical, human, terms is serious

and involves a chance for at least qualified liberty."

2. People ex rel. Stark v. Deegan, 56 Misc. 2d 567, 289 N.Y.S.2d 285 (Sup.Ct. Westchester County, 1968) ; Paul v. Warden of the Suffolk County Jail (New York Law Journal, May 21, 1969, at p. 18, col. 6).